GWIN v. J. W. VESTAL & SON.

4-7048                                              170 S. W. 2d 598

Opinion delivered April 26, 1943.

*L. A. Hardin,* for appellant.

*House, Moses & Holmes, Eugene R. Warren,* for appellee.

McHANEY, J. On and prior to July 19, 1942, appellant was an employee of appellee. On that date he sustained an injury to a finger in closing a ventilator to a greenhouse, in the course of his employment. He was unable to work for a period of time, but his pay was continued. Later he quit working for appellee and was employed at the A. O. P., Jacksonville. He filed a claim with the Workmen's Compensation Commission for medical and surgical services rendered by two physicians and surgeons in treating his injured finger and infected hand. A hearing before the commission resulted in an award for this purpose. On appeal to the circuit court, the award was reversed for the reason that appellee was exempt from the provisions of the "Workmen's Compensation Law"—Act 319 of 1939, as amended by Act 121 of 1941.

The question presented by this appeal is one of law only, and that is whether the "employment," as defined in the Act, is exempt from its provisions. "Employment," in § 2 (c), "means every employment carried on in the state in which five or more employees are regularly employed in the same business or establishment, except (1) domestic service, (2) agricultural farm labor," (3) public charities, (4) the state and its political subdivisions, and (5) persons vending newspapers, etc. The question narrows down to whether appellant was engaged in an "employment" in "agricultural farm labor."

Appellee is a partnership composed of C. H. Vestal, his brother and two sisters. The firm is engaged in business described as florists, nursery and farming. It owns about 68 acres of rural land adjacent to the city of North Little Rock, of which about 6 acres are covered by greenhouses, and all of which, except about 20 acres, is used in connection with its greenhouses and its florist and nursery business. About 15 tons of hay are grown and cut from these lands annually for feed for livestock and for packing material. Three other tracts of land are owned by appellee and all the usual kinds of outdoor crops are grown thereon, corn, cotton, hay, peas and beans.

Appellant had been working for appellee about three years as a common laborer and at the time of his injury was a nightwatchman at the greenhouses. As such he kept the greenhouses at the same temperature by patrolling them and seeing that the steam heat went to them. While engaged in these duties he was letting down one of the glass ventilators and received the injury to his finger.

Under this state of the record, we agree with the trial court that the "employment" here involved was specifically exempted from the "Workmen's Compensation Law." While appellant's particular job was not directly connected with the growing of ordinary farm crops, on the outlying farms of appellee, it was directly connected with the growing of greenhouse crops, such

as flowers and plants, and his employment was a necessary one in appellee's business of floriculture or horticulture, which are embraced in the term agriculture. The exemption in the statute of "agricultural farm labor" included the employment in which appellant was engaged. Most of the Workmen's Compensation Laws of other states exempt "agricultural labor," and we do not think the adding of the word "farm" to the exemption in our statute had the effect of restricting the exemption to those engaged in the growing of ordinary farm crops. If such had been the intent of the legislature, it, no doubt, would have used the words "farm labor" instead of "agricultural farm labor." The word "agricultural" is a descriptive adjective, modifying the noun "labor." The word "farm," as here used, is also a descriptive adjective, modifying the noun "labor." Each describes the kind of "labor" exempted and neither does nor could modify the other because adjectives do not modify other adjectives, but only nouns or noun equivalents. In the case of *Hardin* v. *Vestal,* 204 Ark. 492, 162 S. W. 2d 923, involving the collection of a sales tax against the present appellee, it was recognized that appellee is a floral farmer and as such was engaged in agriculture in its broad sense. So we think the word "agricultural" was put in our statute to exempt a more inclusive class than mere "farm labor." Otherwise, to adopt appellant's contention, the word would have no meaning in the statute. The term "agricultural labor," as used in other state statutes, has been construed many times in connection with greenhouse employees, one of the late cases being *St. Louis Rose Co.* v. *Unemployment Compensation Commission,* 348 Mo. 1153, 159 S. W. 2d 249, arising under the Unemployment Compensation Law of Missouri, which exempts "agricultural labor" from its provisions. It was held that such term had a broader meaning than farming or farm labor and includes one engaged in horticulture. It was pointed out in that case "that some twenty-eight states have provided by statute or regulation that employees of flower growers are engaged in agricultural labor while seven have ruled to the contrary." In the case of *Ginn* v. *Forest Nursery Co.,* 165

Tenn. 9, 52 S. W. 2d 141, it was held that a nursery employee was a "farm or agricultural laborer" as used in the Workmen's Compensation Law of that state.

Appellant cites and relies upon the seven cases holding contrary to this view, notably *Klein* v. *McCleary*, 154 Minn. 498, 192 N. W. 106. We prefer to follow the majority view which is somewhat supported by our own case of *Hardin* v. *Vestal, supra*.

Affirmed.

ROBINS, J., (dissenting). On June 15, 1942, this court delivered an opinion in the case of *Hardin, Commissioner of Revenues* v. *Vestal*, 204 Ark. 492, 162 S. W. 2d 923, wherein the court had to determine the character of operations Vestal was conducting. In that case, as stated in the opinion, Vestal alleged that "he was a florist and nurseryman." In this case, in his statement before the Workmen's Compensation Commission, Vestal's attorney said "Vestal is engaged in farm and agricultural work." In the case cited, the court, in its opinion, said: "Therefore, even though the business of the florist and nurseryman are sub-divisions of agriculture, *it is not difficult to distinguish their business from that of the farmer.* Farming—the growing of grain, cotton, livestock, poultry and other produce—is absolutely essential to the life of the nation, while the growing of flowers and plants and of fruit trees and shrubs is not." (Italics supplied.) But in the case at bar, the majority of the court is in effect saying that the business of Vestal, as operator of a greenhouse, *cannot be distinguished from that of a farmer.*

When appellant Gwin was injured he was working as a nightwatchman at a large greenhouse operated by appellee in the suburbs of North Little Rock. Some forty other laborers worked there. Appellant had worked as a laborer and also as an assistant to the engineer in making repairs on the furnace and pipes which kept the greenhouse warm. At the time he received his injury he was a night watchman. His duties as night watchman were to maintain proper temperature in the greenhouse and to protect the property. In connection with this

greenhouse was a sales office from which appellee carried on his business of dealing in plants, flowers and shrubs. Appellant was hurt while trying to operate a large wheel which controlled a ventilator in the greenhouse.

The majority of the court holds that appellant is not entitled to the benefits of the Workmen's Compensation Act because he was an "agricultural farm laborer." It can hardly be contended that attending to a heating plant, regulating the temperature of a greenhouse, and handling ventilators is "farm labor," but it is urged that, because some of Vestal's operations were agricultural all who worked for him were "agricultural farm laborers." By the same sort of logic it might be said that, if Henry Ford saw fit to operate a farm around one of his plants, a man working on Ford's assembly line would be an "agricultural farm laborer." The court, in construing the language of a statute, ought to give it the ordinary and commonsense meaning which its words import. It is difficult to believe the legislature had in mind, in providing this exemption as to persons engaged in "agricultural farm labor," a man whose duties never took him out into the field or even on a farm and who was doing a kind of work unfamiliar to most of the farm laborers of Arkansas. In a well reasoned opinion, the supreme court of Pennsylvania, in the case of *Hein v. Ludwig,* 118 Pa. Super. Ct. 152, 179 Atl. 917, said: "Agriculture, in the usual and commonly accepted sense of the term, does not include operation of commercial greenhouses; nor is an employee in charge thereof an agricultural worker. The operation of such greenhouses is more akin to industry than to agriculture. They produce under artificial conditions; while the raising of crops, the growing of fruit, and other similar agricultural activities are under natural conditions. They can be erected and operated practically anywhere a factory can be erected and operated. Such an enterprise is not one of those agricultural activities consisting of, or directly related to, the cultivation of the ground in the sense of husbandry. The fact that plants and flowers are raised therein are products of the soil is not controlling, but rather that this is done under artificial conditions in a commercial plant."

In my opinion, appellant was not engaged in "agricultural farm labor" and is entitled to the benefits provided by the Workmen's Compensation Act. I, therefore, respectfully dissent from the opinion of the majority in this case.

I am authorized to state that the Chief Justice concurs in this opinion.