WILBUR HINSON, WIDOWER OF NANNIE MAE HINSON, DECEASED, EM-
PLOYEE-PLAINTIFF v. MR. & MRS. JOHN W. CREECH, t/a JACKSON
EGG FARM, EMPLOYER-DEFENDANT (NON-INSURER)

No. 68

(Filed 26 November 1974)

1. **Master and Servant § 49 — workmen's compensation — farm labor exemption — delivery of eggs to retailer**

    An employee whose duties consisted of cleaning, grading and packaging of eggs, delivering eggs by motor vehicle to retail customers on a regularly maintained schedule, and keeping records of sales and collecting for the eggs she delivered was not a "farm laborer" excluded from coverage under the Workmen's Compensation Act by G.S. 97-13(b).

2. **Master and Servant § 48 — workmen's compensation — agricultural exemption — egg producers delivering eggs to retailers**

    When egg producers formed a business association with a registered trade name, sought to increase the profits of the business by selling and delivering eggs over stated routes to stores, institutions and individuals, and subjected their employee to the daily hazards of operating a motor vehicle upon the highways to places far removed from the farm, their business ceased to be "agriculture" within the meaning of G.S. 97-2(1), which exempts "agriculture" from the meaning of "employment" under the Workmen's Compensation Act.

3. **Master and Servant § 48 — workmen's compensation — exemption for agriculture — service business**

    It is only when a farmer departs from his agricultural pursuits and clearly enters into a service business or another business remote from the direct production of agricultural products that his services cease to be "agriculture" within the meaning of G.S. 97-2(1).

    Chief Justice BOBBITT not sitting.

ON *certiorari* to review decision of the North Carolina Court of Appeals reported in 21 N.C. App. 727, 205 S.E. 2d 606.

On 3 December 1971 deceased, Nannie Mae Hinson, was fatally injured in a motor vehicle accident while operating a truck belonging to her employers and while she was engaged in delivering eggs for her employers.

Plaintiff, the surviving spouse and administrator of the estate of the decedent, filed notice of the accident with the employers pursuant to G.S. 97-22 and filed claim with the Industrial Commission as required by G.S. 97-24. On 30 May 1972, a hearing was held before Chief Deputy Commissioner Delbridge of the Industrial Commission.

Hinson v. Creech

The uncontradicted evidence presented at the hearing showed that defendants John W. Creech and wife Jean Creech, trading as Eugene Jackson Egg Service (employers), were engaged in the production and sale of eggs. Employers bought baby chicks and raised them until they began laying eggs, and when the hens were no longer productive, they were removed from the premises. There were twelve laying houses on the premises, and defendants had purchased a $5,000 egg grader. The eggs were cleaned, graded, and packaged on premises leased by employers and were then delivered to various customers, including stores, restaurants, institutions, and individuals. Brokers also purchased eggs from employers and transported them from the premises. Employers purchased all the chicken feed used in the operation. They also raised hogs on the premises.

Decedent's duties consisted of cleaning, grading, packaging, and delivering eggs. She also kept records of sales and collected for the eggs that she delivered.

It was stipulated that decedent was employed by employers and received an average weekly wage of $50. It was further stipulated that decedent died as a result of injuries sustained in an automobile-truck wreck on 3 December 1971; that on that date employers had five or more employees; and that employers had no Workmen's Compensation Insurance. Evidence was submitted concerning decedent's medical and burial expenses.

After finding facts substantially in accord with the above-recited evidence and stipulations, Chief Deputy Delbridge concluded that "[t]he defendants are engaged in an agricultural pursuit, and the employees of the defendants, including the deceased employee, Nannie Mae Hinson, are farm laborers. The defendants are exempt from the North Carolina Workmen's Compensation Act. . . . "

The claim was dismissed, and plaintiff appealed to the full Commission for further review. The full Commission adopted the opinion and award of Chief Deputy Commissioner Delbridge as its own and affirmed the results of the opinion and award. Plaintiff appealed from the award and opinion of the full Commission, and the North Carolina Court of Appeals affirmed. We allowed plaintiff's petition for writ of certiorari to review the decision of the Court of Appeals on 30 August 1974.

*Gerrans & Spence, by William D. Spence, for plaintiff appellant.*

*White, Allen, Hooten & Hines, by John R. Hooten, for defendants.*

BRANCH, Justice.

We first consider whether plaintiff's intestate was a farm laborer within the meaning of G.S. 97-13(b), which provides, in relevant part: "This Article shall not apply to . . . farm laborers. . . ."

The "farm labor" exemption has generally received a more narrow interpretation than the exemption of "agricultural labor" from the definition of employment under the various Workmen's Compensation Acts. 99 C.J.S. *Workmen's Compensation* § 33, page 195; *Gwin v. J. W. Vestal & Son,* 205 Ark. 742, 170 S.W. 2d 598. Whether an employee is a farm laborer depends, in a large degree, upon the nearness of his occupation to the planting, cultivation, and harvesting of crops. *Mulanix v. Falen,* 64 Idaho 293, 130 P. 2d 866; *see* Note, 16 Tex. L. Rev. 608. In considering the question of whether an employee is a farm laborer, a majority of the jurisdictions have placed emphasis upon the nature of the employee's work rather than upon the nature of the employer's business. 1A A. Larson, The Law of Workmen's Compensation § 53.31.

The prevailing rule is aptly stated in *H. J. Heinz Co., v. Chavez,* 236 Ind. 400, 140 N.E. 2d 500:

> " . . . [A]lthough the character of the 'employment' of an employee must be determined from the 'whole character' of his employment and not upon the particular work he is performing at the time of his injury, nevertheless the coverage of an employee under the Act is dependent upon the character of the work he is hired to perform and not upon the nature and scope of his employer's business. . . ."

*Accord, Bob White Packing Co. v. Hardy,* 340 S.W. 2d 245 (Ky.); *Peterson v. Farmers State Bank,* 180 Minn. 40, 230 N.W. 124.

In reaching its decision, the Court of Appeals relied heavily upon *Department of Labor and Industries v. McLain,* 66 Wash. 2d 54, 401 P. 2d 211. There the Court held that a chicken farm

constituted "farming" within the meaning of the Washington statute. *McLain* is factually distinguishable from instant case in that there the claimant was on the premises of the farm shoveling snow from the roof of a chicken house. The duty that he performed was obviously a necessary farm chore connected with the raising of chickens and production of eggs.

The Court of Appeals also relied upon *Fleckles v. Hille*, 83 Ind. App. 715, 149 N.E. 915, which stated that agriculture includes the "raising, feeding and management of livestock and poultry," and upon *Davis v. Industrial Commission*, 59 Utah 607, 206 P. 267, which contains the following language: "Every standard authority that defines the word agriculture includes in the definition the rearing and care of livestock."

We have no quarrel with the holdings in these cases; however, they furnish no authority for decision of the question here presented. In instant case there is no evidence that plaintiff's intestate was ever engaged in duties which included the "raising, feeding, care and management of livestock or poultry." To the contrary, the uncontradicted evidence shows that plaintiff's intestate regularly used employers' automobile to deliver employers' eggs to retail customers on a regularly maintained schedule. Her other duties consisted of cleaning, grading, and packaging the eggs. She also kept records and collected for the eggs delivered to various retail customers, including stores, restaurants, institutions, and individuals.

[1] We hold that the duties of plaintiff's intestate were sufficiently removed from the normal process of argiculture to prevent her exclusion from coverage under the Workmen's Compensation Act as a "farm laborer."

We next turn to the question of whether the employment relationship under the facts of this case constituted agriculture within the meaning of G.S. 97-2(1), which exempts "agriculture" from the definition of "employment" under the Workmen's Compensation Act.

Traditionally, agriculture has been broadly defined as "the science or art of cultivating the soil and its fruits, especially in large areas or fields, and the rearing, feeding, and management of livestock thereon, including every process and step necessary and incident to the completion of products therefrom for consumption or market and the *incidental* turning of them to account." 3 Am. Jur. 2d *Agriculture* § 1 (emphasis supplied) ; *see*

*Keeney v. Beasman,* 169 Md. 582, 182 A. 566. This traditional definition has been extended to encompass the storage and marketing of agricultural products. *H. Duys & Co. v. Tone,* 125 Conn. 300, 5 A. 2d 23; *Bucher v. American Fruit Growers Co.,* 107 Pa. Super. 399, 163 A. 33; *see generally* 3 C.J.S. *Agriculture* § 2. The same general definition of agriculture ·has obtained under the various Workmen's Compensation Acts, *see generally* 1A A. Larson, The Law of Workmen's Compensation § 53.30, and at least one court has construed such a definition to include egg-producing operations. *Department of Labor & Industries v. McLain, supra.*

It must be recognized that the line of demarcation between agricultural and nonagricultural employment often becomes "extremely attenuated." *Mulanix v. Falen, supra; see generally* 1A A. Larson, The Law of Workmen's Compensation § 53.33 and cases there cited. The question in marginal factual situations must frequently turn upon whether the employment is a separable, commercial enterprise rather than a purely agricultural undertaking. *See* Davis, *Death of a Hired Man,* 13 S.D.L. Rev. 1.

In *Crouse v. Lloyd's Turkey Ranch,* 251 Iowa 156, 100 N.W. 2d 115, defendant was engaged in business under a trade name and operated a turkey and chicken operation on a six-acre tract. When the poultry was ready for market, he processed about half the turkeys by slaughtering and dressing them in his own processing plant located on the premises. Plaintiff, a seasonal worker in the processing plant, was injured when she slipped on the floor in the processing plant and brought an action to recover Workmen's Compensation benefits. The Court held that the employee was not engaged in agriculture within the meaning of the agricultural exclusion. Although the Iowa statute contains wording somewhat different from our own, we nevertheless consider the reasoning helpful in instant case. The Court there stated a test for inclusion in doubtful situations:

"The determination of where agriculture stops and commercial processing begins is not easy. The defendant thought it more profitable to process as many of his turkeys as he could sell; but this in no way answers the question. Grains must be harvested, and fruits and vegetables must be garnered and put in condition for marketing; and these are properly a part of agriculture. But the problem before us goes one step further. It involves the question of a

process, not necessary but perhaps more profitable, in marketing. . . . ”

In *Barbour v. State Hospital*, 213 N.C. 515, 196 S.E. 812, a State employee suffered fatal injuries while driving a tractor in the cultivation of food crops on State land. His representative filed a claim with the North Carolina Industrial Commission, and defendant contended that it was exempt from the provisions of the Workmen's Compensation Act. The full Commisson ruled in favor of plaintiff, and the Superior Court, in affirming the award of the full Commission, *inter alia*, concluded " . . . [t]hat the statute's exemption of farm laborers was intended for the protection of farmers as an occupational class, and a farm laborer in contemplation of the statute is a man hired to till the soil or to do other agricultural work by one whose occupation is that of a farmer. . . . ”

In affirming the opinion and award of the full Commission, this Court stated:

" . . . The question involved: Is the death of a State employee, arising out of and in the course of his employment, while driving a tractor in the cultivation of food crops on the lands of the State used by the State Hospital at Raleigh compensable under the Workmen's Compensation Act? We think so.

"This and other courts of the United States have held that the various compensation acts should be liberally construed so that the benefits thereof should not be denied upon technical, narrow and strict interpretation. The primary consideration is compensation for injured employees. We think the judgment of the court below correct—that the State Hospital employee, Tessie Barbour, deceased, was not a 'farm laborer' in contemplation of the statute.”

[2]    The rule of liberal construction stated in *Barbour v. Hospital, supra,* is supported by a host of decisions in this jurisdiction. *See, e.g., Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281; *Hollman v. City of Raleigh*, 273 N.C. 240, 159 S.E. 2d 874; *Cates v. Construction Co.*, 267 N.C. 560, 148 S.E. 2d 604; *Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596. We concede that the production of eggs is an agricultural pursuit. Nevertheless, in the case *sub judice,* when employers formed a business association with a registered trade name and sought to increase the profits of the business by selling and delivering

eggs over stated routes to stores, institutions; and individuals, they subjected their employee to the daily hazards of operating a motor vehicle upon the highways to places far removed from the farm. Applying the above-stated rule of liberal construction to the facts of this case, we conclude that employers' business ceased to be agriculture and became part and parcel of the activities of the marketplace.

[3]   By this decision we do not intend to hold that the ordinary marketing of produce by a farmer or the incidental sale of eggs, poultry, or other farm products should be in any way affected. It is only when a farmer departs from his argicultural pursuits and clearly enters into a service business or another business remote from the direct production of agricultural products that his services cease to be "agriculture" within the meaning of G.S. 97-2(1).

We hold that the Court of Appeals erred in affirming the conclusion of law adopted by the full Commission that "[t]he defendants are engaged in an agricultural pursuit, and the employees of the defendants, including the deceased employee, Nannie Mae Hinson, are farm laborers. The defendants are exempt from the North Carolina Workmen's Compensation Act. . . ."

This cause is remanded to the Court of Appeals with direction that it be returned to the North Carolina Industrial Commission with order for entry of opinion and award in accord with this opinion.

Reversed and remanded.

Chief Justice BOBBITT not sitting.