DEVELOPMENT ASSOCIATES, INC., PETITIONER v. THE WAKE COUNTY BOARD OF ADJUSTMENT: JAMES R. FULLWOOD, CHAIRMAN; BILLY G. HINTON; RUSSELL BUXTON; JOHN E. TANTUM; RALPH E. SMITH; J.H. COBB; AND BERNARD ALLEN; THE COUNTY OF WAKE; AND JOHN G. SCOTT, WAKE COUNTY DIRECTOR OF PLANNING; H. ERNEST McDONALD AND STATE OF NORTH CAROLINA, RESPONDENTS

No. 8010SC169

(Filed 2 September 1980)

1. Municipal Corporations § 31– zoning – review of decision of board of adjustment – reasonable time within which to file petition

The superior court had the discretion to determine whether a petition for certiorari to review a decision of a county board of adjustment was timely filed where there was no statutory provision as to the time for filing the petition at the time in question, and the court did not abuse its discretion in determining that a delay in filing the petition of 49 days after the decision of the board of adjustment was announced at the hearing and 35 days after its written order was issued was not an unreasonable delay. Former G.S. 153A-345(e).

2. Counties § 5.2; Municipal Corporations § 30.11– zoning ordinance – exemption for farming – dog breeding and kennel operation

Dogs do not constitute "livestock," and a dog breeding and kennel operation does not constitute "farming" so as to exempt the property used therefor from a county's zoning authority pursuant to G.S. 153A-340.

APPEAL by respondent McDonald from *Smith, Donald L., Judge.* Judgment entered 25 September 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 12 June 1980.

In October 1976, petitioner acquired approximately 193 acres of land in Wake County within the zoning jurisdiction of Wake County and zoned for Residential-20 use and began its

development for single family residential purposes in the same year. In April 1977, McDonald acquired approximately 2.5 acres of land in the same general location and adjacent to that of the petitioner, after having filed with the Wake County Planning Department a farm exemption statement claiming exemption from the same county zoning provisions under which the use of the petitioner's land was regulated. McDonald, with the County's permission, then began development of his land for a dog breeding and boarding kennel facility for which he claimed the above exemption.

On 30 January 1978, petitioner requested the Wake County Planning Director to apply the zoning regulations of the Wake County Zoning Code to McDonald's property so as to revoke the farm exemption statement-permit and prevent the use of the property for dog breeding and boarding. The Wake County Planning Director denied the request. In February 1978, petitioner appealed the denial to the Wake County Board of Adjustment. The Board of Adjustment affirmed the Planning Director's decision by an order dated 20 April 1978. Petitioner, on 23 May 1978, filed a petition for review and certiorari in Wake County Superior Court, requesting that the Board's order be vacated. An order and writ of certiorari were granted on 1 June 1979 by the Superior Court, and on 25 September 1979, the Court entered its judgment reversing the Board of Adjustment's order. Respondent McDonald appealed.

*Lake & Nelson, P.A., by Broxie J. Nelson, for petitioner.*

*Bode, Bode & Call, P.A., by W. Davidson Call, for respondent McDonald.*

*Assistant Wake County Attorney Arthur M. McGlauflin for respondent Wake County.*

WELLS, Judge.

[1] Respondent's first assignment of error presents the question of whether petitioner's petition for writ of certiorari was timely filed. At the time the writ was sought in this case, G.S.

Development Associates v. Board of Adjustment

153A-345(e)[1] provided that, "[e]ach decision of the board [of adjustments] is subject to review by the superior court by proceedings in the nature of certiorari." Respondent argues that a delay in seeking the writ of forty-nine days after the decision of the board of adjustments was announced at the hearing and thirty-five days after its written order was issued was an unreasonable delay, and that for this reason petitioner's application for the writ should have been denied. Prior to the 1979 amendment to G.S. 153A-345(e) our statutes made no provision as to the time within which the writ of certiorari might issue in cases of this type. Under such circumstances, it was within the sound discretion of the superior court as to whether the writ was timely sought, and in the absence of a clear abuse of that discretion, we do not find error here. *Cf.*, Rule 21(c), N.C. Rules of Appellate Procedure (petition for certiorari to the Supreme Court or Court of Appeals of North Carolina must be filed without reasonable delay).

[2] In his second and third assignments of error, respondent calls into question the conclusions of the trial court that the Wake County ordinance is invalid and that his dog-breeding operation does not qualify for the farm exemption under State law. G.S. 153A-340 contains the legislative grant of power to counties to enact zoning ordinances. In pertinent part, it provides:

> For the purpose of promoting health, safety, morals, or the general welfare, a county may regulate and restrict

---

[1]G.S. 153A-345(e) was amended effective 1 January 1980 to provide in relevant part:

> ... Each decision of the board is subject to review by the superior court by proceedings in the nature of certiorari. Any petition for review to the superior court shall be taken within 30 days after the decision of the board is filed in such office as the ordinance specifies, or after a written copy thereof is delivered to the appellant, whichever is later. The decision of the board may be delivered to the appellant either by personal service, or registered mail or certified mail return receipt requested.

1979 N.C. Sess. Laws, ch. 635.

(1) The height, number of stories, and size of buildings and other structures,

(2) The percentage of lot that may be occupied,

(3) The size of yards, courts, and other open spaces,

(4) The density of population, and

(5) The location and use of buildings, structures, and land for trade, industry, residence, or other purposes, except farming.

These regulations may not affect bona fide farms, but any use of farm property for nonfarm purposes is subject to the regulation.***

Next, we consider the pertinent parts of the Wake County Code, found in Section 1-1-36(A):

(A) AGRICULTURAL OR FARMING PURPOSES:

All realty, and all buildings and structures whatsoever, being or to be used for agriculture, farming, livestock, or poultry operations and all forestry land shall be exempt from each and every provision of this ordinance. Agricultural or farming purposes shall be realty, buildings or other structures which fall into any one of the following classifications:

(1) Any area of realty which is comprised of forty (40) acres or more;

(2) Any area smaller than forty (40) acres which yields an annual gross income of five hundred dollars ($500) or more from any agricultural, farming, livestock or poultry operation, exclusive of home gardens.

Judge Smith rules that to the extent that Wake County Code Section 1-1-36(A) attempts to restrict the provisions of G.S. 153A-340, it is invalid. Since we hold that petitioner's dog-

Development Associates v. Board of Adjustment

breeding operations are not "farming" activities within the meaning of G.S. 153A-340, we do not reach the issue as to the validity of the County's ordinance insofar as it purports to restrict the definition of the farm exemption contained in the statute.

Respondent argues that the proposed dog-breeding operation is a farming activity and not subject to the county's zoning authority under G.S. 153A-340. Although the terms "farm" and "farming" are nowhere defined in G.S. 153A-340, whether the legislature intended to include dog-breeding activities within the meaning of these terms can reasonably be inferred from other statutory sources.

Chapter 106 of the General Statutes relating to agriculture contains numerous references to animals and livestock. To some extent, these terms are used interchangeably. A careful examination of these various statutory provisions leaves the clear impression that dogs are not regarded as livestock under Chapter 106. For instance, Article 35B contains the Livestock Dealer Licensing Act, and G.S. 106-418.8(2) provides, "The term, 'livestock' means cattle, sheep, goats, swine, horses and mules . . . ." Article 35, entitled "Public Livestock Markets", speaks in terms of "cattle, swine, or other livestock." *Accord*, G.S. 106-411. G.S. 106-407(1) exempts from the requirements of the article, "[a] market where horses and mules exclusively are sold." The only references to dogs which we find in Chapter 106 are the vaccination requirements of Article 34, Part 7.

Article 3 of Chapter 68 of the General Statutes deals with fencing requirements for livestock. G.S. 68-15 provides, "The word 'livestock' in this Chapter shall include, but shall not be limited to, equine animals, bovine animals, sheep, goats and swine." In *Meekins v. Simpson*, 176 N.C. 130, 96 S.E. 894 (1918), our Supreme Court interpreted the term livestock as used in G.S. 68-15, as not to include dogs.

Chapter 67 of the General Statutes, entitled "Dogs", deals with dogs so as clearly to distinguish them from livestock. G.S. 67-1 provides:

Liability *for injury to livestock or fowls.* — If any dog, not being at the time on the premises of the owner or person having charge thereof, shall kill or injure any livestock or fowls, the owner or person having such dog in charge shall be liable for damages sustained by the injury, killing, or maiming of any livestock, and costs of suit.

Article 5 of Chapter 67 is entitled "Protection of Livestock and Poultry from Ranging Dogs."

Looking to the tax laws for further guidance, we note that G.S. 105-277.2(1) provides that

"Agricultural land" means land and improvements thereon constituting a farm tract actively engaged in the commercial production or growing of crops, plants or animals under a sound management program. (This definition includes woodland and wasteland which are a part of a farm tract.)

While the term "animal" is not further defined in Chapter 105, we find that in G.S. 153A-153 the General Assembly has provided that: "A county may levy an annual license tax on the privilege of keeping dogs and other pets within the county," and has thus indicated an intent to classify dogs as pets rather than livestock. G.S. 105-164.4(1)g establishes a reduced sales tax rate in the sale of certain machinery and accessories to "dairy operators, poultry farmers, egg producers, and livestock farmers for use by them in the production of dairy products, poultry, eggs or livestock."

In *Hinson v. Creech,* 286 N.C. 156, 209 S.E. 2d 471 (1974), our Supreme Court was dealing with the exemption of agricultural employment under the Worker's Compensation Act, G.S. 97-2(1). We find the following passage from the Court's opinion in *Hinson* helpful here:

Traditionally, agriculture has been broadly defined as "the science or art of cultivating the soil and its fruits, especially in large areas or fields, and the rearing, feeding, and management of livestock thereon, including every pro-

cess and step necessary and incident to the completion of products therefrom for consumption or market and the *incidental* turning of them to account." 3 Am. Jur. 2d *Agriculture* § 1 (emphasis supplied); *see Keeney v. Beasman*, 169 Md. 582, 182 A. 566. This traditional definition has been extended to encompass the storage and marketing of agricultural products. *H. Duys & Co. v. Tone*, 125 Conn. 300, 5 A. 2d 23; *Bucher v. American Fruit Growers Co.*, 107 Pa. Super. 399, 163 A. 33; *see generally* 3 C.J.S. *Agriculture* § 2.

286 N.C. at 159-160, 209 S.E. 2d at 474.

G.S. 62-241, dealing with negligence presumed from killing livestock, provides as follows:

When any cattle or other livestock shall be killed or injured by the engine or cars running upon any railroad, it shall be prima facie evidence of negligence on the part of the railroad company in any action for damages against such company . . . .

In an early case, interpreting the foregoing statute, *Moore v. Electric Co.*, 136 N.C. 554, 48 S.E. 822 (1904) our Supreme Court held that dogs are not included in the category of cattle or livestock.

Chapter 14 of the General Statutes contains three separate provisions pertaining to the larceny of animals pertinent to the issue in this case. G.S. 14-84 provides that the larceny of any dog shall be a misdemeanor; while G.S. 14-85 provides that if any person shall "pursue, kill or wound any horse, mule, ass, jennet, cattle, hog, sheep or goat, the property of another, with the intent unlawfully and feloniously to convert the same to his own use, he shall be guilty of a felony . . . ."

A careful analysis of the legislative intent as expressed in these statutory enactments and decisions of our Courts leads us to the conclusion, and we so hold, that under our laws dogs are not included in the classification of livestock and that dog breeding and the operation of a dog kennel are not "farming" activities within the meaning of G.S. 153A-340. Accordingly,

respondent's property is subject to the zoning restrictions enacted by Wake County.

The judgment of the trial court reversing the order of the Board of Adjustments is

Affirmed.

Chief Judge MORRIS and Judge VAUGHN concur.